# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: IMPERIAL CAPITAL BANCORP, INC., a Delaware corporation,<br><br>Debtor. | CASE NO. 11-CV-2065<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO WITHDRAW THE REFERENCE** |

Now pending before the Court is the FDIC's motion to withdraw the reference to the bankruptcy court of two matters: (1) Imperial Capital Bancorp's objection to a proof of claim filed by the FDIC, as receiver for Imperial Capital Bank, in ICB's bankruptcy; and (2) the Committee of Unsecured Creditors' motion for permission to investigate and bring claims against ICB's former officers and directors on behalf of the bankruptcy estate.

The bankruptcy court has already ruled on ICB's objection, which it granted and denied in part, and the CUC's motion, which it granted. (*See* Dkt. No. 7-2, Exs. D, E, and F.) It also denied the FDIC's request to stay those rulings pending the Court's resolution of the motion to withdraw their reference. (Dkt. No. 7-2, Ex. C.) Subsequently, the Court denied that same stay request, finding that the FDIC "has not shown it is likely to prevail on the merits of the withdrawal motion." (Dkt. No. 14.)

I.   **Legal Standard**

This is not the first time the FDIC has sought to withdraw matters from the bankruptcy court. Previously, in a related matter, the Court granted the FDIC's motion to withdraw a

- 1 -

"Tax Refund Proceeding" and related "Stay Violation Action," and it denied a motion to withdraw a "Capital Maintenance Claim." (*See* Case No. 10-CV-1991, Dkt. No. 22.) The Court will follow the same legal standard now that it followed then:

> Bankruptcy courts have the authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157. But cases arising under title 11 — or matters within those cases — may also be withdrawn from bankruptcy courts and heard by district courts:
>
>> The district court may withdraw, in whole or in part, any case or proceeding . . . on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
>
> 28 U.S.C. § 157(d). The first sentence of § 157(d) has been read to provide for "permissive" withdrawal. The second sentence has been read to provide for "mandatory" withdrawal.
>
> Permissive withdrawal, which needs to be supported only by "cause," requires a district court to consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen*, 124 F.3d 999, 1008 (9th Cir. 1997). If "non-core" actions predominate — actions, that is, that "do not depend on bankruptcy laws for their existence and that could proceed in another court" — permissive withdrawal may be appropriate. *Id.*
>
> There are two prevailing interpretations of the mandatory withdrawal language in § 157. The first, which is a textual interpretation, supports the withdrawal of any dispute that requires the consideration of non-bankruptcy law. *See, e.g.*, *In re Addison*, 240 B.R. 47, 49 (C.D. Cal. 1999) ("Mandatory withdrawal is required in those cases that call for material consideration of both title 11 and non-title 11 federal law."). The problem with this interpretation is that it "would force district courts to withdraw matters in which [Bankruptcy] Code questions overwhelmingly predominate and consideration of non-Code statutes would be *de minimus*." *In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984).
>
> The alternative, and more favored interpretation requires

that the consideration of non-bankruptcy law be "substantial and material" before withdrawal is mandatory. *See, e.g., Holmes v. Grubman*, 315 F.Supp.2d 1376, 1379 (M.D. Ga. 2004). The court in *Holmes* reasoned that "mere application of federal law does not make withdrawal mandatory; withdrawal is only mandatory when complicated, interpretive issues are involved, especially with matters of first impression or where there is a conflict between bankruptcy and other laws." *Id.* (internal quotations omitted). It added, "what is necessary for a mandatory withdrawal is that the resolution of non-bankruptcy law must be essential to the dispute." *Id.* The Ninth Circuit has not indicated which standard of mandatory withdrawal courts should apply, but it has approved the "substantial and material" test in dicta. *See Sec. Farms*, 124 F.3d at 1008 n.4 (implying that mandatory withdrawal requires "the presence of substantial and material questions of federal law"). The majority of courts have adopted a "substantial and material" standard, and this Court will, too. *See, e.g., Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 222 (D. Hawaii 2006).

## II.  Proof of Claim Objection

ICB filed for bankruptcy on December 18, 2009, the same day that the California Department of Financial Institutions closed Imperial Capital Bank and appointed the FDIC as receiver. On June 15, 2010, the FDIC filed a proof of claim in ICB's bankruptcy for the aggregate sum of $88,900,000. Over a year later, on June 16, 2011, ICB filed an objection to the proof of claim. According to ICB, it objected specifically to:

> (I) intercompany claims by the Bank against the Debtor, (ii) claims to certain insurance proceeds and premium refund claims, (iii) claims against the Debtor under the "Imperial Capital Bancorp Rabbi Trust Agreement Amended and Restated Effective January 1, 2005", (iv) claims for deposit funds in one of the Debtor's accounts at CNB, (v) fraudulent conveyance claims, (vi) claims based on the purchase and assumption agreement the FDIC-R and CNB, (vii) other unsecured claims, and (viii) unsecured claims to approximately $29 million in tax refunds, in the event that the FDIC-R does not prevail in the Tax Refund Complaint.

(Dkt. No. 6-1 at 4–5.)  The basis of ICB's objection was twofold.  First, it argued that the FDIC failed to validate, and specify an amount of, the individual claims.  Second, it argued that the claims were barred, anyway, by, 11 U.S.C. § 502(d).  That statute, according to ICB, "precludes a creditor that received a preferential transfer from obtaining any recovery unless and until it disgorges the preferential transfer or the value thereof."  (Dkt. No. 6-1 at 5.)  The "preferential transfer" at issue is ICB's transfer of $7,230,855.53 in federal and state tax

- 3 -

refunds to Imperial Capital Bank in November 2009.

Based on ICB's description of both the FDIC's opposition to its objection and its own reply, it appears that only the second argument is still on the table. (*See* Dkt. No. 6-1 at 5.) The FDIC's chief response is that ICB is precluded from asserting § 502(d) by 12 U.S.C. § 1828(u)(1). The consideration that must be given to § 1828(u)(1) is also the stated basis for the withdrawal from the bankruptcy court of ICB's objection to the FDIC's proof of claim. (Dkt. No. 1-1 at 18.) ICB argues that § 1828(u)(1) is inapplicable to the claim objection, and from there suggests that "it is evident that the Bankruptcy Court will not need to engage in a 'substantial or material' review of said section." (Dkt. No. 6-1 at 11.)

The parties' briefs both miss the point here. The only question before the Court now is *where* the claim objection is to be heard, not what its ultimate fate is. The question isn't, in other words, whether § 1828(u)(1) actually bars ICB from invoking §502(d) in its claim objection. The question is whether the consideration of § 1828(u)(1) is "substantial and material" in resolving that claim objection. It is. ICB's *own brief* shows that it is. (Dkt. No. 6-1 at 9–11.) It would be one thing if ICB could argue that the FDIC's invocation of § 1828(u) is a frivolous attempt to ensnare the claim objection in federal law and remove it to this Court. But instead, there seems to be a sincere and reasonable dispute between the parties about the interplay between § 502(d) and § 1828(u)(1) on the particular facts of this case. The Court finds that this is sufficient cause to withdraw the claim objection from the bankruptcy court.[1] The FDIC's motion is therefore **GRANTED**.

---

[1] The Court is less persuaded by the FDIC's arguments that the bankruptcy court lacks jurisdiction to hear ICB's claim objection, based on 12 U.S.C. §§ 1821(d)(6)(A) and (d)(13)(D). (Dkt. No. 1 at 13–16.) First, the bankruptcy court is perfectly capable of examining its own jurisdiction relative to that of this Court, even if it must consider non-bankruptcy law in doing so. Unlike § 1828(u)(1), jurisdiction does not go to the merits of ICB's claim objection, and a jurisdictional argument is, technically, not the same thing as an argument for mandatory withdrawal under 28 U.S.C. § 157(d). Second, as the Court recognized when it previously considered a motion to withdraw the reference, bankruptcy courts are adjuncts of district courts, and a statutory grant of jurisdiction to a district court doesn't necessarily divest the bankruptcy courts of it. (*See* Case No. 10-CV-1991, Dkt. No. 22 at 9 (citing *BankUnited Financial Corp. v. FDIC*, 436 B.R. 216, 221 (S.D. Fla. 2010)).) Third, § 1821(d)(13)(D) on its face only relates to claims against the FDIC, or more accurately, claims against the assets of failed banks held by the FDIC. Defenses to proofs of claims filed by the FDIC are presumably different. (*See* Case No. 10-CV-1991, Dkt. No. 22 at 9.)

### III. CUC's Motion to Investigate

The Court sees the withdrawal of the CUC's motion for permission to investigate and bring claims against the former officers and directors of ICB differently. The basis of this withdrawal request is the FDIC's contention that any claims against the officers and directors belong to the FDIC, not ICB:

> The alleged D&O conduct was at the Bank level by the Bank's D&Os, with any damages suffered directly by the Bank, and with only indirect damages to ICBI as the holding company, so that any claims based upon the D&O Conduct and resulting damages to the Bank belong exclusively to the FDIC-R as Receiver for the Bank pursuant to 12 U.S.C. § 1821(d)(2)(A)(I).

(Dkt. No. 1-1 at 3.) Again, the FDIC confuses the merits of the motion with the ability of the bankruptcy court to decide it. Or, as the CUC makes that point, "The issue is whether the bankruptcy court can and should decide the Permission Motion, not whether the Permission Motion should be granted." Federal law may, as the FDIC suggests, supply the general principle that the FDIC succeeds to all of Imperial Capital Bank's rights, but federal law does not ultimately determine what rights belong to the Bank and ICB in the first instance, nor does it determine whether the CUC should be allowed to investigate potential claims against the officers and directors. The FDIC concedes that "[w]hether a claim is derivative or direct is a question of state law," and its argument even culminates in the citation of a *bankruptcy court* decision resolving such a question. (Dkt. No. 1-1 at 21.) Its reliance on this decision contradicts, substantially, its claim that the CUC's motion for permission to investigate *must* be withdrawn because its resolution calls for "substantial and material" consideration of federal law.[2] The Court therefore rejects the FDIC's argument for mandatory withdrawal here. *See Siegel v. Caldera*, 2010 WL 1136220 at *4 (C.D. Cal. Mar. 19, 2010) ("Whether Trustee's claims arise out of Directors' wrongdoing to Bank or Bancorp can be resolved by evaluating the claims as stated in the Complaint. The issue only presents a factual dispute:

---

[2] The explanation for this oversight is probably, as the CUC eagerly points out, that the FDIC's memo in support of withdrawal "repeats, almost word-for-word, the FDIC-R's opposition to the Permission Motion . . . ."

- 5 -

'What does Trustee claim?' The answer depends entirely on the facts asserted in the Complaint and not any federal law.").

The Court discerns two other arguments from the FDIC for withdrawal of the reference of the CUC's motion. The first is that the bankruptcy court lacks jurisdiction pursuant to § 1821(d)(13)(D). The Court rejects this argument for the same reason it rejected it with respect to the withdrawal of the claim objection. *See infra* n. 3. The second argument is that any claims against the officers and directors are subject to this Court's exclusive jurisdiction because of the "FIRREA Action" (or "Receivership Action") pending before it. (*See* Case No. 10-CV-2067.) The Court agrees with the CUC here. In the FIRREA Action ICB advances the minimal claim that it is entitled to any proceeds of officer and director liability policies. That claim does not encompass, and is distinct from, the merits of any claims asserted under the policies, or the question whether those claims are covered by the policies. As the CUC articulates the point, "[T]here is absolutely no factual or legal connection between the D&O Claims and the resolution of the Receivership Complaint's claim concerning the D&O Policies." The FDIC's motion to withdraw the reference of the CUC's motion to investigate is **DENIED**.

**IV.    Conclusion**

The motion to withdraw the reference is **GRANTED IN PART AND DENIED IN PART**. A couple of admonishments moving forward. One, the withdrawal statute, 28 U.S.C. § 157(d), should be invoked sparingly. The Court's guiding assumption is that the bankruptcy court has a far better command of this case than it ever could, and it will always be deferential to that institutional competence. Two, the parties simply must do a better job briefing the issues in this case. The briefs that have been submitted, particularly from the FDIC, are simply too long, too drenched in bankruptcy legalese, too punctuated with defined

//
//
//
//

terms, too heavy with unnecessary exhibits, and too presumptive in terms of what the Court can reasonably be expected to process.

**IT IS SO ORDERED**.

DATED: December 29, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge